406 F.2d 1158
 70 L.R.R.M. (BNA) 2268
 GROENDYKE TRANSPORT, INC., Appellee,
v.
Elmer DAVIS, Regional Director, 16th Region, National Labor
Relations Board, Appellant, and Southern
Conference of Teamsters, Intervenor.
 No. 26812.
 United States Court of Appeals Fifth Circuit.
 Jan. 2, 1969.
 
 Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D.C., Elmer P. Davis, Regional Director, N.L.R.B., Fort Worth, Tex., for appellant.
 Payne Ratner, Wichita, Kan., Joe H. Tonahill, Jasper, Tex., for appellee.
 L. N. D. Wells, Jr., Mullinax, Wells, Mauzy, Levy & Richards, Dallas, Tex., for intervenor, Southern Conference of Teamsters.
 Before JOHN R. BROWN, Chief Judge, THORNBERRY, Circuit Judge, and TAYLOR, District Judge.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 This case raises two questions, the first, perhaps more important than the second, concerns the method by which we determine the cause. The second, more traditional, goes to the merits. We conclude that expedited disposition by summary proceedings on briefs but without oral argument is called for and proper. To the merits our answer is reversal of the Trial Court's decree as an unwarranted intrusion into the domain of the Board.
 
 I.
 
 2
 This case comes to us on a motion of the NLRB to summarily reverse an order of the District Court enjoining enforcement of an Excelsior[1] order issued by the Board directing Groendyke Transport Co., the Employer, to furnish to the Regional Director a list of the names and addresses of all employees in units eligible to participate in the Board-ordered election. The Employer opposes summary disposition.[2]
 
 
 3
 On June 5, 1968, the Board issued a Decision and Direction of Election in Board Case No. 16-Rc-4660 and 4661 directing the Regional Director to conduct elections among certain units of Employer's employees. Pursuant to the rule announced in Excelsior Underwear, Inc., 1966, 156 NLRB No. 111, the Board, in its Decision and Direction of Election, ordered Employer to submit to the Regional Director a list of the names and addresses of its employees in each unit eligible in the elections.
 
 
 4
 The Employer refused to produce the list as directed. Consequently, on June 24, 1968, the Regional Office served on it a subpoena duces tecum for the information requested.
 
 
 5
 The Employer did not move to revoke the subpoena, as it is entitled to do under 11(1) of the Act and 102.66(c) of the Board's rules, 29 C.F.R. 102.66(c). Rather, on June 26, 1968, the Employer filed a complaint in the Court below seeking to enjoin the Regional Director from conducting the elections as directed by the Board, and permanently to enjoin the Regional Director from initiating proceedings in any Federal Court to enforce the subpoena duces tecum or otherwise to seek to enforce the Board's Excelsior requirement.
 
 
 6
 On July 5, the Regional Director filed a motion to dismiss the complaint on the grounds that the Court lacked jurisdiction over the subject matter of the action and the complaint failed to state a claim upon which relief can be granted.
 
 
 7
 After a hearing on July 12, the Court below, on August 1, issued its decision denying the Regional Director's motion to dismiss and enjoining him from enforcing or attempting to enforce the Board's Excelsior rule against the Employer. Relying on the decision of the First Circuit in Wyman-Gordon Co. v. N.L.R.B., 1 Cir., 1968, 397 F.2d 394, cert. granted, 393 U.S. 932, 89 S.Ct. 301, 21 L.Ed.2d 268, the Court below found that the Excelsior rule is unenforceable and void because it was issued in violation of 2 and 3 of the Administrative Procedure Act (5 U.S.C.A. 552, 553). The Court below therefore concluded that it had jurisdiction over the subject matter of the action under Leedom v. Kyne, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, that the subpoena issued by the Board against the Employer should be enjoined, and that the Regional Director be permanently enjoined from seeking to enforce any Board subpoena ordering the production of the names and addresses of the Employer's employees as required by the Board's Excelsior rule and the Decision and Direction of Election issued on June 5, 1968.
 
 II.
 
 8
 The Employer challenges vigorously this Court's power under FRAP Rule 2[3] to summarily dispose of the appeal. Besides the suggestion of en banc determination of that question (see note 2 supra) it also moved for oral argument on the Board's motion for summary reversal. The motion was considered without oral argument in accordance with the long tradition of this Court. See Local Fifth Circuit Rule 10(c). Its argument almost demolishes FRAP Rule 2 by the broad assertion that the Rules having the force of a statute[4] assure to litigants the regular (at a sometime-leisurely pace) procedure for filing of a printed record (or appendix), the preparation and filing of regular briefs, and the submission with oral argument when, and as, the Court with its schedule can calendar the case either routinely or specially.[5]
 
 
 9
 At a time in which courts are everywhere importuned to exhaust fully all imaginative resources of judicial inventiveness,[6] it would be an amazing thing to read FRAP Rule 2 as a new, narrow restriction on the power of the Courts of Appeals to gear themselves to the exigencies of today's complex legal problems, procedural and substantive, and to the demands of administrative judicial productivity. The Rule--set out perhaps purposefully at the very beginning--recognizes the need for special handling and the parallel existence of power. The usual thing is for submission with oral argument. But when the case is judicially determined not to warrant or require that usual process the Court, consistent with a fair opportunity to the parties to advance and counter arguments and contentions, can and should prescribe the method of submission and disposition.
 
 
 10
 We can think of at least two circumstances under which summary disposition is necessary and proper. Both of them appear in this case. The first comprises those cases where time is truly of the essence. This includes situations where important public policy issues are involved or those where rights delayed are rights denied. Second, are those in which the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous. Without canvassing all other possible or likely situations, we hold that where either of these circumstances is found, summary disposition is proper.
 
 
 11
 As with the demands of statutes and rules, nothing in the constitutional concept of due process forbids special, summary disposition without all of the marks of a traditional submission. Parties are normally assured a 'hearing' but that term does not demand that the communication be oral and audible. By long practice, and frequently by express rules[7] important substantive or procedural issues are fully and finally disposed of by the highest of tribunals wholly on written papers without oral argument of any kind. The requisites of that portion of due process described as 'hearing' are satisfied by providing the parties with the opportunity of affirmatively advancing argument with supporting authority and a like opportunity for response and counter-argument by the adversary. This may be done by briefs without oral argument. Oral argument, as such, is rarely, if ever, so essential to elemental fairness as to orbit to a constitutional apogee. Indeed, the practice of Courts of disposing of cases in a variety of situations on the papers, reflects the experience of mature judges that oral argument in many, many cases adds nothing to the process of enlightenment. In these times of exploded and exploding[8] dockets every proper effort must be made to allow Courts to hear and decide more cases more expeditiously. Indeed, the due process and equality so cherished is denied by the very process of nominally treating all cases alike. Thus every time a frivolous appeal or one in which there is a practical certainty how it must be decided is calendared and argued orally, some other litigant with a meritorious appeal, presenting serious questions of law for consideration by the Court, is deprived of his place at the bar. And it seldom is any answer to say that relief to such postponed litigant should come by expedited special settings. It isn't long until nearly all are preference cases.
 
 
 12
 When a case is frivolous or its outcome so certain as a practical matter the appellate court is not compelled to sacrifice either the rights of other waiting suitors, its own irreplaceable judge time or administrative efficiency in judicial output by a traditional submission with all the trappings.[9]
 
 
 13
 We therefore find more than ample authority for summary disposition by the Court on its own motion or that of a party. Having determined that we have the power, we summarily reverse. The fact that we term this a 'summary' reversal does not imply that the legal question presented was not thoroughly considered on its merits.[10]
 
 III.
 
 14
 The merits may be disposed of quickly. The injunction was issued on August 1, 1968, and has prohibited the Board from going ahead with the representation proceeding. Instead of a prompt resolution of the question whether a majority of Employer's employees in the designated plants desire to be represented by the petitioning union, this litigation has caused delay and uncertainty. It amounts to an unwarranted intrusion into matters committed to the Board with a frustrating effect on a statutory mechanism that is to be swift and subject to minimal judicial scrutiny and then only under precise circumstances. Court interference suspends or burdens the election process.[11]
 
 
 15
 This Court has spoken clearly on need for speed and the limited review of representation proceedings. 'Certification orders are normally reviewable only when the Board petitions a court of appeals for enforcement of an order to bargain entered pursuant to section 8(a)(5). The reason for severely circumscribing court interference in representation matters is to avoid dilatory tactics which would postpone the commencement of bargaining when the employer really had no substantial objections to the conduct of the election other than a desire to delay bargaining as long as possible.'
 
 
 16
 'In a similar vein, the federal courts have restricted the use of their equity powers to restrain representation proceedings to three very narrow situations. One exceptional set of circumstances is presented where the suit tenders 'public questions particularly high in the scale of our national interest because of their international complexion.' McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547, 552 (1963). Another exception, which has been fashioned primarily by the Second Circuit, comes into play where there is a substantial showing that Board action has violated the constitutional rights of the complaining party. See Fay v. Douds (2 Cir. 1949) 172 F.2d 720. The third exception, on which the appellee relies strongly, is predicated on the Supreme Court's decision in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). There the court upheld a district court injunction setting aside a Board election and certification where the Board had clearly acted 'in excess of its delegated powers and contrary to a specific prohibition in the Act.' * * * The courts have generally interpreted Kyne as sanctioning the use of injunctive powers only in a very narrow situation in which there is a 'plain' violation of an unambiguous and mandatory provision of the statute.' Boire v. Miami Herald Pub. Co., 5 Cir., 1965, 343 F.2d 17, 20-21.
 
 
 17
 The Supreme Court is likewise clear. 'In the normal course of events Board orders in certification proceedings under 9(c) are not directly reviewable in the courts. This Court held as long ago as American Federation of Labor v. (National) Labor (Relations) Board, 308 U.S. 401 (60 S.Ct. 300, 84 L.Ed. 347) that the 'final order(s)' made reviewable by 10(e) and (f) in the Courts of Appeals do not include Board decisions in certification proceedings. Such decisions, rather, are normally reviewable only where the dispute concerning the correctness of the certification eventuates in a finding by the Board that an unfair labor practice has been committed as, for example, where an employer refuses to bargain with a certified representative on the ground that the election was held in an inappropriate bargaining unit. In such a case, 9(d) of the Act makes full provision for judicial review of the underlying certification order by providing that 'such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed in the Court of Appeals.' Boire v. Greyhound Corp., 1964, 376 U.S. 473, 477, 84 S.Ct. 894, 896, 11 L.Ed.2d 849, 852-853.
 
 
 18
 The District Court erroneously relied on Wyman-Gordon Co. v. NLRB, 1 Cir., 1968, 397 F.2d 494, cert. granted, 393 U.S. 932, 89 S.Ct. 301, 21 L.Ed.2d 268, since this Court later specifically approved the Excelsior rule in Howell Refining Co. v. NLRB, 5 Cir., 1968, 400 F.2d 213 (August 12, 1968). Judge Gewin said this for the Court: 'We find the Rule to be a valid exercise of the Board's power to insure employees a fair and free choice in the selection of their representative.' 400 F.2d at 216.
 
 
 19
 Contrary to Employer's assertion this was not dicta. The Excelsior rule was specifically attacked. This Court took note of the First Circuit's decision and in passing upon the validity of Excelsior rejected Wyman-Gordon. We are bound by Howell and without reservation we may also say that it is right.
 
 
 20
 We are not alone. The Fourth Circuit has also approved the Rule in N.L.R.B. v. Hanes Hosiery, 4 Cir., 1967, 384 F.2d 188, cert. denied, 1968, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141. And more recently the Second Circuit in a comprehensive analysis of all facets of the attack on Excelsior rejects each and all to uphold it without equivocation. N.L.R.B. v. Beech-Nut Life Savers, Inc., 2 Cir., 1968, 406 F.2d 253 (Dec. 3, 1968).
 
 
 21
 We are undaunted by the grant of certiorari in Wyman-Gordon. Conceding the uncertainty of forecasting a jury verdict or an appellate decision, we see no portent of imminent mortality to Howell. But in any event the Supreme Court has made abundantly clear that Leedom v. Kyne, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 is to be narrowly construed. Boire v. Greyhound Corp., 1964, 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849, 854-855. And we have given vitality to the policy of court noninterference[12] in RC cases except in the three circumscribed situations discussed in Boire v. Miami Herald Publishing Co., supra. None of these exists here.
 
 
 22
 The injunction was unwarranted and must be vacated without delay to permit Board processes to go on.
 
 Reversed and remanded.[13]
 
 
 [1]
 Excelsior Underwear, Inc., 156 NLRB No. 111, 1966 CCH NLRB P20, 180
 
 
 [2]
 So strenuous is Employer's objection that in its responsive opposition it invokes FRAP Rule 35, Local Fifth Circuit Rule 12 to suggest hearing en banc, on the Court's power to dispose of the case summarily. But no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on hearing en banc, (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the petition for hearing en banc is denied
 
 
 [3]
 Rule 2 provides: 'In the interest of expediting decision, or for other good cause shown, a court of appeals may, except as otherwise provided in Rule 26(b), suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.'
 Rule 26(b) refers to time in which notice of appeal must be given.
 
 
 [4]
 See the Enabling Act. 28 U.S.C.A. 2071, 2075. See also 1949 U.S.Code Cong. Service at p. 1248
 
 
 [5]
 The applicable rules are: Briefs, Rule 28; Appendix to the Briefs, Rule 30; Filing and Service of Briefs, Rule 31; and Oral Argument, Rule 34. Experience has demonstrated that if the time schedule provided for by the rules were followed the case would not be ripe for calendaring for approximately 180 days from the date the appeal is taken from the decision of the District Court
 
 
 [6]
 See, e.g. the annual remarks of the Chief Justice to the American Law Institute in Bros. Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1965, 351 F.2d 208, 209 n. 1, cert. denied, 1966, 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852; Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731, 738 n. 22; Jackson v. Choate, 5 Cir., 1968, 404 F.2d 910; Jackson v. Dept. of Pub. Welfare of Fla., S.D.Fla., 1968, 296 F.Supp. 1341, 1342, n. 1. This problem is developed at length with detailed data concerning the Fifth Circuit in the Senate Report of Hearings on the Operation of Procedures for the Temporary Assignment of Federal Judges, 1968, before the Subcommittee on Improvements in Judicial Machinery, 90th Cong., 2d Sess., at 64-80 (1968); testimony and statement of the Chief Judge with supporting exhibits, Crisis in Courts of Appeals, at 80-84 (1968); and remarks of Senator Tydings, Chairman, Oct. 8, 1968, 114 Cong.Rec.S. 12237-39
 
 
 [7]
 Perhaps most notable is that of the statutory appeal as a matter of right from 3-Judge District Courts to the Supreme Court. See 28 U.S.C.A. 1253. The great bulk of these cases are disposed of by the jurisdictional statement and motion to dismiss or affirm as prescribed by Supreme Court Rules 13 and 16
 
 
 [8]
 See note 6 supra
 
 
 [9]
 Although the problem there is whether the appellate court is ever to give any consideration to the asserted merits, cases dealing with allowance of appeals in forma pauperis, 28 U.S.C.A. 1915, or the similar one of granting a certificate of probable cause in a habeas appeal, 28 U.S.C.A. 2253 shed some light on when a 'hearing' is required. See, e.g., Coppedge v. United States, 1961, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21. 'Upon such presentation the Court of Appeals found itself satisfied that petitioner's conviction was proper. It is true that no oral argument was permitted. However, having come to the conclusion that the case had no merit, the court had to put a stop to the review proceeding. This is true whether the appeal is paid or nonpaid. * * * We adjudicate most of our appeals in the same manner, i.e., by dismissing or affirming on the briefs without argument. Inasmuch as the case had arisen within the procedural confines of appeals in forma pauperis, the Court of Appeals simply denied leave to appeal. It could have granted leave to proceed and then summarily affirmed or dismissed the appeal under Rule 39(a), Fed.Rules Crim.Proc.' Dissent, 369 U.S. at 461, 82 S.Ct. at 929, 8 L.Ed.2d at 37
 See also United States v. Johnson, 1946, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 'Rule IV gives the Circuit Court of Appeals power to supervise and control all proceedings on the appeal and to expedite such proceedings by, among other things, entertaining motions to dismiss. * * * Under that Rule the Circuit Court of Appeals here, after studying the issues raised, and upon determining that the only objection was to the trial court's findings on conflicting evidence, should have decided that this does not present the reviewable issue of law and on its own motion have dismissed the appeal as frivolous.' 327 U.S. at 113, 66 S.Ct. at 467, 90 L.Ed. at 566; Nowakowski v. Maroney, 1967, 386 U.S. 542, 87 S.Ct. 1197, 18 L.Ed.2d 282; and Carafas v. La Vallee, 1968, 361 U.S. 234, 88 S.Ct. 1556, 1562, 20 L.Ed.2d 554, 561: 'Although Nowakowski does not necessarily require that the Court of Appeals give the parties full opportunity to submit briefs and argument in an appeal which, despite the issuance of the certificate of probable cause, is frivolous, enough must appear to demonstrate a basis for the court's summary action.'
 The First Circuit in Magnesium Casting Co. v. Hoban, 1968, 401 F.2d 516, 518, expressly holds that summary disposition without oral argument meets the requirements of due process.
 
 
 [10]
 The motion for summary reversal was filed in this Court on October 9, 1968. From that date until the date of this opinion, the parties have been free to file, and have filed extensive motions, briefs, reply briefs, and supplemental briefs bringing us up to date on the grant of certiorari in Wyman, and the Second Circuit's recent Excelsior decision, post Part III. Indeed, they have taken full advantage of this more than eight-week period and have thoroughly expressed their views
 
 
 [11]
 In a reply memorandum the Employer suggests there is now no urgency for expedited action since elections have been held (half were lost by the Union) at ten of the terminals. The Board informs us, however, that the Regional Director has recommended invalidating such elections for failure to comply with Excelsior
 This sequential controversy dramatizes the disruptive effect of court intrusion.
 
 
 [12]
 Bokat v. Tidewater Equip. Co., 5 Cir., 1966, 363 F.2d 667
 
 
 [13]
 The mandate shall issue immediately. Its effective date will be deferred for 10 days from its date to permit Employer to seek a stay from the Circuit Justice, the Supreme Court or a Justice thereof. 28 U.S.C.A. 2101(f)